All right, next case of the morning is number 23-30181 Cameron Parish Recreation v. Indian Harbor. Mr. Malkonian. Good morning, Your Honors, and may it please the Court, Raffi Malkonian, for the appellants in this matter, the insurers. Your Honors, in terms of the merits, this is a relatively straightforward question. The question presented here is whether an arbitration provision is enforceable in a surplus lines policy in Louisiana. The answer to that question is undoubtedly yes, for at least two reasons, under both the Federal Arbitration Act and under the New York Convention. Now, of course, I know that— Okay, but we don't get to that if this, if we don't have subject matter jurisdiction because this shouldn't have been appealed, so we need to take a look at that question. And so, to me, the question, I just don't understand. The district court said in like March 29th-ish, we got to get this done by April 14th. Why didn't y'all just finish it out? And then, then he said, then we'll look, then we'll look at the arbitration. It seems like the question is, is there just one insurance contract or are there many? Why can't y'all just answer that? This is the only one we have or here's all the rest of them, flop, here they are. Why, why was that a problem? Yeah, let me answer that in a couple ways, Your Honor. Okay. First of all, as to why it's a problem. I don't know if Your Honor has looked at the discovery request that they sent out yet, but I urge the court to do that. Well, I mean, I know there was a long list, but the, the focus that the district court had was on this question of one or many. Right, so let me— And why wouldn't, you know, the documents be the key? I agree, eight depositions would be a bit odd, but please tell me. Well, let me address that directly. I think the easiest way to deal with that, Your Honor, is to decide this case under the Federal Arbitration Act, as the district court ought to have done. Because the Federal Arbitration Act question that our friends on the, the argument they make on the FAA has nothing to do with whether there's one contract or ten contracts or a hundred contracts. It's just on the four corners of this arbitration agreement. And their only argument for why the arbitration agreement should not be enforced is that the Louisiana statute bars enforcement in this case. That's all they have. And so the, it's just the question of statutory interpretation. And on that question, we already know what Judge Kain thinks about it, because he issued the Bufkin decision before all of this, which treats exactly the same policy with many of the same insurers, different plaintiffs, obviously. And we know that Judge Kain believes that the Louisiana statute categorically bars arbitration agreements in surplus lines policy. Would you explain to me briefly, A, how much, how much is the claim here among these three different entities? How much is the total insurance at issue? And then, what role is surplus lines? If this were an ordinary arbitration contract, Louisiana could deny arbitration could it not? Yes, Your Honor. Okay. That's exactly right. So, why is it different? Why is it different? Yes, Your Honor. So, it's a question of the distinction between 22868A and D. So, Louisiana revised statute 22868A bars arbitration agreements, according to the Louisiana Supreme Court, in normal insurance contracts. So, non-surplus lines policies. Then, D is about surplus lines policies. Everyone agrees in this case about that. It doesn't say surplus lines policies. What it says is insurance policies that are approved by the Louisiana Department of Insurance. So, they're not regulated, in other words? That's right, Your Honor. And those mean surplus lines policies. Okay. Those are special policies, as Your Honor knows, that you can't buy in Louisiana because for whatever reason, it's not available as a business proposition. So, they go outside Louisiana and get these non-regulated surplus lines. Is this largely commercial insurance? Yes, Your Honor. These are all commercial policies. See, I'm not dealt with surplus lines. We've had a lot of policies, but ... Yes, Your Honor. These are special policies that you get when you can't find domestic insurance. And that's also another reason why the New York Convention is so important here. These are international contracts, and they get good pricing by including international insurers. But let me get back to the 22868 question. So, A bars arbitration agreements in normal insurance policies. Then you look at D. D was added, and it says in surplus lines policies, there's an exception. You can have forum or venue selection clauses. Then the Louisiana Supreme Court has directly held that in ... It's a case called Donilon, that an arbitration provision is a subset of a forum or venue selection clause. I know Your Honors know that this court has always held that, that arbitration clauses are just forms of forum selection clause. And the U.S. Supreme Court has so held. So, it's really to us a very simple stair step. You look at the contract. It says arbitration agreement. Then you look at 22868. It says you can have forum or venue selection clauses in surplus lines policies. And everyone knows that surplus ... Excuse me, arbitration agreements are those. So, well, maybe I should ask the plaintiff's point of this discovery. I don't know what the plaintiff's discovery is, Your Honor. Did the judge conduct any inquiries about what was the point of the discovery? No, Your Honor. And look, you know, in my ... There was a status conference before the discovery was issued, correct? There was a status conference, yes, Your Honor. He considered it. Maybe not the way you wanted to, but it was considered. But ... He considered it, Your Honor, yes. What did he decide? Yeah, I know he considered it, but the thing is that this 22868 argument, the FAA argument, has nothing to do with the discovery. I think our friends on the other side would concede that. The discovery is all about the New York Convention, the second way we would ... Well, Judge King said the court agreed, la, la, la, for limited discovery into the policy numbers, certificate numbers, and their relationship to the principal policy and how they interact. That was it. That's why I'm saying, I think the notion of eight depositions would be ridiculous, but you either have a bunch of other policies that are relevant here, or you don't. If you have them, throw them out. If you don't, punch it out and say we don't have it. Well, Your Honor, let me just ... I'm just saying, you know, it makes no sense to me why this was so disputed when it's a pretty basic . . . I've been through a lot of discovery in my life as a lawyer, and eight years as a state district judge, I'm well aware of discovery issues, but I don't see that here if the question that the judge was interested in is what was . . . was this just one policy or many? Now, I know you think that doesn't make a difference, but if the judge thinks that could have, why wouldn't y'all have addressed that? Your Honor, I would say, first of all, the judge, I don't think, thinks it makes a difference as to the FAA argument. I think he thinks it makes a difference to the New York Convention argument, but we win on the FAA, on the document that's in the record. Yeah, well, but I can't . . . I mean, I can't know what the judge is thinking, but I can know what the judge is ruling, and that's what I'm asking. The judge is ruling on this limited discovery, so what was the problem in either producing these other documents or saying they don't exist? Well, Your Honor, let me say, we presented the district judge with the extraordinary discovery that they wanted from us in a motion to stay discovery after he ruled. We explained to him, look, we understand what you said, but here's what they're asking for. It's an astonishing amount of discovery for pre-arbitration, including they want to delve into the history of this arbitration clause, which has nothing to do with anything, and that's what they're asking for, and the judge said, no, go ahead and do it anyway. So this is not a situation where all we have to do is respond and say, look, there's one policy, there's ten policies. Now, as to that question, let me answer the question. The question is, there's one policy. That's when you look at this insurance policy, it keeps talking about the insurance policy. If you look at the arbitration agreement, it says this arbitration agreement is between the companies and the insured, all the companies, and so whether there are ten documents or one document, it doesn't make any difference. They signed an arbitration agreement that is with all the parties. Let's move back to the question of appealability for a minute, because we were looking at the cases that are cited by both sides for the question, what is the essence of the judge's policy in essence denying arbitration? And most of those cases come up in a context where the upshot of the particular order may not have said I deny arbitration, but I will, you know, deny a motion to dismiss or deny a motion to compel, won't rule on a motion to compel, and so on. So how do you put this into the category, what's your best case putting this into the category of cases where the essence of the order denies arbitration? Yes, Your Honor, I have two answers to that, but let me just start with a quick analogy. The way I was thinking about this is under 1291, the normal appellate jurisdiction statute, you know, that allows immediate appeal of a preliminary injunction, as we all know, but this Court has said many times that if it's not called a preliminary injunction, you can still sometimes appeal it if it has the effect of a preliminary injunction. So that's my sort of analogy. I understand. It's the substance, not the effect. Right. So the best, the very best case I think we have is Kovalevsky. That's the Seventh Circuit case. There's also Obelix, where Judge Easterbrook is repeating what the Seventh Circuit has held previously. There is a case from this Court called Salas, which cites Kovalevsky, and then puts a CF cite as to Van Dusen, which is the Ninth Circuit authority that's against us. Now I understand. I'm not trying to persuade you by blue booking signals, but I do think the Court was effectively saying, you know, we don't agree with Van Dusen on this point, because Van Dusen says it has to literally be called a denial of a motion to compel. But the other point I want to raise, and it's not a case, is that remember that there are two prongs for appellate jurisdiction here. One is a denial of a motion to compel arbitration. You understand my argument on that. But the second is a refusal of a motion to stay litigation pending arbitration. That's 9 U.S.C. Section 16, I think it's Big B. But anyway, it says refusal. And that word refusal is a broader term in my view than denial, because a refusal is not a term of art. I mean, no judge enters an order that's called a refusal. It's a broader word. And that word, if you look at the . . . Well, he did refuse the motion to stay, or he denied it, at ROA 655. Right. But as I said, said 45 days, we'll get this discovery done. And that's why, I mean, that was almost coming up on a year ago that he said that. I understand the issue, Your Honor. But let me push back a little bit on what you just said. Remember that we filed a motion to stay and to compel arbitration. That's our very first document. He didn't grant that. Instead, he ordered discovery. To us, that's a refusal. Or is it delay? Is it delay? Delay is not refusal. Delay . . . Delay for 45 days. Mere delay, perhaps, may not be a refusal. I think I'm willing to concede that. This is not mere delay. This is an order of extremely onerous discovery, pre-arbitration, that the Supreme Court has many times said, the whole point of arbitration is to get you out of court and into the arbitration that you agree to as fast as possible and without the burdens of litigation. I was rereading the McDermott case from 1991, Your Honors. That's the one that, you know, starts some of these line of cases. And one thing the court said in that case is, it's very important to have appellate rights in the New York Convention context because states might erect procedural barriers to get you out of litigation and into arbitration. And in the context of an international commercial transaction where everyone agreed on the arbitration at the beginning, and that was extremely important to getting this pricing and to getting this insurance for the plaintiffs, it's important to get you into the arbitration agreement that you all agree to. What is the breakdown of state courts on this issue and Louisiana courts? Yes, Your Honor. So I think you may have seen our 28J letter on Friday. We think that there's starting to be a consensus on this 22868 issue in our favor in the district courts. Obviously, this court has not yet spoken on that question. We urge the court to do that because there are many cases percolating on this issue. We represent appellants in two more that are coming very soon. It's all coming out of the most recent hurricane? It's the last two hurricanes. The last two, okay. Yes. There's just an avalanche of cases. Can I ask you again, what are the, what's the size of the insurance claims in this case? Your Honor, I remember you asked me that. I actually don't know the answer to that off Let me briefly address, if I might have a minute left, the New York Convention argument on the merits, if the court is satisfied. Well, actually, let me ask you about this. In the arbitration clause, it says all matters in difference in relation to this insurance, including its formation and validity, shall be referred to arbitration. Does that mean that the validity of the arbitration agreement is arbitrable under this clause? That's the way we understand it, Your Honor. Why didn't you argue that? Our friends on the other side would say that this isn't a question of the validity of the arbitration agreement. It's a question of the enforceability of the arbitration agreement against Louisiana statute. So, it's not a validity question. They concede validity. Okay. Whatever you say. I don't think we'll hear that they're against the validity of it. Yeah. Okay. Thank you, Your Honor. All right. You have a chance for rebuttal. Ms. Gauthier. Good morning. Camille Gauthier on behalf of the Cameron Parish Entities. I want to start with and focus the majority of my time on jurisdiction, which we saw the insurers essentially try to leapfrog past and urge the merits. But because there's no order that would trigger jurisdiction under 9 U.S.C. 16, there's no jurisdiction to even entertain this appeal. And then next, I'll focus very briefly on how— How about this R.O.A. 655 that he's denying the motion to stay? So, Your Honor, a couple of things on that. So, number one, it's requesting a stay of the non-merits discovery, right, that he's denying. He's not denying a motion to stay the totality of the proceedings. The motion to compel arbitration and stay proceedings, that's still pending. That's been held in abeyance. And in fact, you'll note that Cameron Parish has never even filed an opposition to that brief. So, the motion to compel arbitration and stay proceedings has not been resolved. What has been—what he denied, right, is the motion to stay the non-merits discovery. And I want to— It's a 45-day delay plus onerous discovery, not a refusal. I'm sorry, can you repeat that, Your Honor? It's a 45-day delay plus the onerous discovery, not a refusal to grant the— Sure, Your Honor. So, first of all, I would disagree that the discovery was in any way one corporate representative designated for all of the insurers, right? So, there was only going to be one brief corporate representative deposition. And Judge Haynes, as you were noting, right, the discovery is not burdensome at all or needless because all the insurers need to do is simply respond if there is no additional— What is the point of this discovery? What are you trying to demonstrate? I don't understand. The judge didn't write on it. I don't understand what your point is. This document looks pretty clear to me. Sure. That there's an arbitration clause and whether you do it under the FAA or the New York Convention, it's there. Whether it's one policy or ten policies, it's there. Sure, Your Honor. And so, certainly in the district court's discretion, he agreed that discovery would be useful. And so, we see— Useful, why? You tell me why. We see a reference to at least ten or eleven literally different policy numbers, right, suggesting there are more documents. There could be modifying language. There could be a lack of an arbitration provision in whatever these additional policies— Why don't you— You're the arbitrator there. Why don't your—that's a good point, but why don't your clients have the other policies if there's other policies? Well, Your Honor, I mean, we do not have the ambit of the totality of the documents that the insurers would have, right? So, they're referencing—it's their own certificate number. Yeah, they would have. I mean, I used to do insurance law as a lawyer, and the other side when I represented the insurance company had the insurance policy, even if they didn't bother to read it. That was an argument I was always making. So, I'm trying to understand. And I did represent insurers, too, so I'm not an insurer-zuh, too. So, I'm not trying to say I'm for the insurance company or against the insurance company. I'm just saying you get the policy, so your people should have the policy. They may not have every document in the insurance building, but they have the policy, don't they? Well, and Your Honor, they do not have any additional documents, and it's the insurer's own representations, right, that there are additional policies that exist. And the insurers continue even now, right, to suggest that there are multiple policies. But I don't want to focus all my time on that because I think regardless, the district court, in its discretion, ordered it, and it doesn't in any way—it's a sort of merits-based question when we focus on discovery, and the jurisdictional piece means that we shouldn't even reach that because we don't have an order denying a motion. Well, I don't—but discovery has to have some relation to some issue that the district court has the ability to decide. And if there is one policy or ten policies, and whether it's the FAA or the New York Convention, you have this clause. You're stuck with this So, what are you getting at? What argument would you possibly make to the district court? Sure. There could be additional and modifying language in the documents that we've still— There's no modifying language to which you have agreed. This is what you agreed to. Yes, Your Honor, and I would also note the argument is made there are service of suit endorsements, right, and so additional documents could explain the intent related to that. But again, I want to go back to my original point, and that is there's no order that would trigger appellate jurisdiction right now. So, even if we were to assume and presume that the district court somehow abused its discretion in ordering this discovery, there's still no basis, right? There's no line of cases that would say this court has appellate jurisdiction. Actually, the line of cases to which they refer is that which says we construe the practical effect of an order rather than necessarily the wording, and we do that all the time when we're interpreting what the lower courts have done. So, the practical effect of this is to say, you know, I'm going down a rabbit hole that has nothing to do with progressing the case toward arbitration as the agreements provide. Well, Your Honor, I would submit 9 U.S.C. 16, right, is very narrow and bright line with only a few particular types of orders. We don't have that here, and so— Explain to me once more that distinction. If they filed a motion to stay non-merits discovery, right, that's what you're saying? Yes. Their motion is limited to non—but isn't that the point, that there is no legitimate non-merits discovery here? Well, Your Honor, that's the argument that they're trying to make, but my point would be that that does not allow the court to have appellate jurisdiction. If we look at 9 U.S.C. 3, right, it refers to after the district court has decided, upon being satisfied that the issues involved is referable to arbitration, and then 9 U.S.C. 16 refers to an appeal may be taken from an order refusing a stay of an action under Section 3, right? So the point is, the order, the motion to compel arbitration and stay the proceedings, that's still pending. That's not even been briefed. There's no district court record. Okay, well, but if the judge—I know the judge here has said, okay, the 45 days and all that, but we don't know what would have happened at the end of the 45 days if they'd said, we're not going to produce somebody for a deposition. Then you come in, but they gave you some document, and you come in, you have some more arguments. The judge keeps swirling and swirling and swirling and never deciding. That's a decision, because eventually you get all the discovery you want in the case, and you're about ready for trial. And that's the problem. That shouldn't be going on in the district court if, in fact, there should be an arbitration. All that should be going in front of the arbitrator. Right, and that's certainly not what happened here, Judge Haynes. There was a tight, narrow time frame for specific— Not at first, just later. Not in the November of the 444 or whatever, but later on the judge said that. But what I'm trying to understand is, if the judge is like swirling around deciding—and I'm not saying that's what the judge is doing, but swirling around it and just not going to decide and going to keep the case going, isn't that, in essence, a decision to deny it? Well, Your Honor, I don't agree with that. And I think at that point in time, we wouldn't be under 9 U.S.C. 16. Perhaps the party could consider requesting mandamus relief or something like that if we were seeing things being drawn out and the court truly abusing its discretion. But we don't have the trigger under the narrow circumstances of 9 U.S.C. 16. And we heard mentioned to Van Dusen a moment ago, right, which is directly on point. The insurers essentially concede that it's on point, but they suggest that it's simply not persuasive and this court shouldn't follow that here. And I don't see how that could be because Van Dusen, in fact, talks about how it does not trigger appellate jurisdiction under 9 U.S.C. 16 when the court is simply doing something designed to lead to a decision on a motion to compel arbitration. Well, but without an explanation from the judge, and frankly, we've had no explanation from you as to what you intend . . . what is your ultimate argument against arbitration? Assume that they're hidden documents or not. What are you trying to get out of this? The ultimate argument against arbitration on the merits or with respect to the decision? You don't want our . . . your clients do not want arbitration. Is that your point? Well, it's certainly correct, right, that there are . . . Right. Why do you not . . . why do you think you will be able to avoid arbitration? Well, there's many reasons, right, including Louisiana 22868, right, and there's a policy prohibition in the state of Louisiana . . . Okay. We understand that. What else? You didn't sue the foreign defendants, so let's, you know, let's just assume it's an arbitration. What other excuses are there? Well, there's service of suit language within various endorsements, right, by which these insurers state that they consent to a suit in a court of competent jurisdiction, right, if the insured . . . That's not a defense. Well, it modifies . . . I'm not going to regard that as a defense, where it's FAA, or no, it's . . . right. Well, I want to note, right, so there are endorsements that have that language. The So they modify, supersede, and state that there are specific circumstances where a court of competent jurisdiction is appropriate. Okay, fine. You don't need any discovery to make that legal argument based on the documents. Well, I would note in McDermott, for example, this court . . . You don't need it, do you? Do you? Why do you need discovery to make that argument? Well, this court has noted in McDermott, for example, that service of suit language can mean different things. It can be ambiguous and read different ways, right? So documents that would exist, that would explain, modify, describe the intent would also be useful. But . . . Okay. But again, regardless, Your Honor, I don't want to get too stuck up on the specific discovery order. My point being, right . . . The point is that if the discovery order has nothing to do with your arguments against arbitration and cannot . . . You know, I think we can look at that as just a functional way to delay the obvious. So Your Honor, I guess let's even assume, if we assume that the district court abused its discretion in allowing this discovery, I want to then proceed to explain why, at the absolute maximum, if this court assumes that it has jurisdiction and can entertain this appeal, the maximum the court can do is consider the discovery order. But it certainly can't go and delve into the merits of the Convention of Equitable Estoppel of Louisiana revised statute because there's no district court record, right? And so, of course, we know that this is a court, one of review and not first view. There's not even an opposition brief filed by Cameron Parish in the record, no attachments that they would have used to support their argument. I know that the insurers rely heavily on an equitable estoppel theory here. Well, equitable estoppel must be reviewed for abuse of discretion. There's no record. It's a fact-specific . . . Okay. If we were construing this district court's judgment as refusing to decide the arbitration, which is the same as essentially denying it, could we remand and say, decide it now, period, end of story? If the court, right, assumes that it has jurisdiction under 9 U.S. 16, then I would agree that, right, sort of the maximum or the appropriate next step would be to send it to the district court to allow a complete record to be made, right, for Cameron Parish to file its brief and make . . . I'm saying no more. I mean, you have not really explained the discovery. This whole thing just makes very little sense to me. I've done thousands of hearings on discovery as a state district judge, so I'm well aware of discovery issues. It's not something new to me, and yet I'm struggling with what it is that you want and why you want it. Is the premise of your argument that the service of suit clauses in the amendment seems to conflict with the arbitration clause? Well, it can be . . . That's potentially true because, right, we know that the endorsements state that they change the policy, and so they either supersede and override it, or they could potentially be harmonized with it such that in a narrow set of circumstances like this, at the insured's request where there's a failure to pay, they can bring a claim in a suit . . . They can bring a lawsuit in a court of competent jurisdiction. And so, well, Your Honor, I want to, I guess, get back to the fact that . . . So, again, even if we assume that the discovery, it was an abuse of discretion, and we assume this court has appellate jurisdiction, there's still no circumstance where it would be appropriate to reach the convention, the revised statute, the equitable estoppel, service of suit endorsement type arguments because we need a record below, and we need the district court to have an opportunity to consider it. And I'll note, for example, there's a very recent case from the Third Circuit called Sarah Carr Care that just came out in August of 2023, right, where the district court had proceeded to allow full merits discovery, right, not non-merits discovery like we have here, but full merits discovery was proceeding forward with the pretrial conference and had not ruled on a motion to compel arbitration. The Third Circuit remanded that case with instructions that the district court decide the pending motion to compel in the first instance to ensure effective review and allow the district court to provide reasoned analysis. And it confirmed on remand that the court may engage in limited discovery to the extent necessary on arbitrability. So I would submit that, again, at the absolute most, if this court were to determine it has appellate jurisdiction, which under the bright line test of the orders allowed under 9 U.S.C. 16, it does not because we don't have that type of order here, the court at most would allow the district court to provide reasoned analysis and review and allow a district court record to be met. Very briefly, I want to respond to, we heard a moment ago that Kovaleski was potentially the best case in support of the argument. I want to note that in that case, there was expressly a minute entry in which the court said the motion to compel arbitration is denied, right? So there's no doubt any time we have an order that actually says a motion to compel arbitration is denied, that that will trigger appellate jurisdiction. And so that's what we heard is sort of the best case in support, and that does not support the insurer's argument that we would somehow have jurisdiction here because there was an actual denial, and we simply don't have that here. There's no case that they've cited. In fact, the most analogous case is Van Dusen, right, where when a court is just making interim decisions along the way designed to lead to an ultimate decision on the merits, we don't have appellate jurisdiction at that time. Very briefly, as I wrap up, I want to just touch on a few of the merits-based arguments, though of course, without appellate jurisdiction, the court should not reach them. We heard briefly about the convention. Of course, the convention is not triggered here. There are no allegations in the complaint against any foreign insurer. There's no agreement between— Let me ask you about that. You know, every argument that you're making is to the ultimate detriment of people who want insurance in Louisiana, and so your main argument is, let's keep this ball in the air a long time, notwithstanding the availability of arbitration in 99% of these cases and according to the growing body of federal law here in the district courts, so let's just keep this ball in the air. The longer you do that, the less the insurers are going to come to Louisiana. There's a nationwide problem about insurance right now, as reflected on the cover page of the Wall Street Journal today. So the longer you keep this ball in the air, you raise the cost for everybody, number one, including the taxpayers of Cameron Parish, and number two, you said that you're not suing two of the insurers. Does that mean you'd collect from all the others if the entire loss would mean that the two Lloyds, the Lloyds carriers don't contribute? Does that mean you're setting an upper limit on what you can collect? Well, Your Honor, the allegations in the petition, right, are that there are no allegations against foreign insurers and that they've been released from liability. So to the extent, right, whatever their specific— Well, in this particular case, right, the decision was made and the allegations in the petition were to release those specific foreign entities. So there's no agreement with any foreign entity, foreign insurer at issue here. Briefly, on equitable estoppel, again, as I mentioned, that theory has to be reviewed for abuse of discretion, and it's a poor fit here regardless because, again, there are no allegations in the complaint against any foreign insurer, so there's no ability for the domestic insurers to try to piggyback and assert equitable estoppel. And finally, briefly, on the Louisiana revised statute, there's—district courts have ruled different ways. There are at least seven or eight cases, right, throughout the Eastern District of Louisiana, the Western District of Louisiana, and the Southern District of New York going to the contrary of the authority cited in the 28J letter of Friday. However, I'll note that it's longstanding policy, right, that arbitration provisions are not enforceable as to Louisiana-delivered insurance policies, and the Louisiana Supreme Court just in 2019 in Creekstone-Jubin explained that when the legislature wants to prohibit a foreign forum, like, for example, a New York forum, the legislature has been unequivocal by employing the terms venue or forum, thereby distinguishing the concepts from jurisdiction, right? And so that's exactly the language that we see here in subsection D, which shows us that the jurisdiction of the action provision remains in force and arbitration remains prohibited. So for all those reasons, Your Honors, and those in our briefs, we would ask the court to dismiss this appeal for lack of jurisdiction and solely in the alternative to affirm the district court to entertain full briefing and rule on the merits of the motion to compel arbitration in the first instance. Thank you. All right. Thank you. Mr. Malconian. Thank you, Your Honor. I think I have four points. One, my friend on the other side refers to the service of suit endorsement. That argument is fully foreclosed by the 1991 McDermott case. This court held that service of suit provisions need to be construed together with the arbitration provision. And what that means is that we consent to jurisdiction for purposes of compelling arbitration and things like that. It is not an overriding of the arbitration provision. So I don't think that argument is even in the case. They can take an en banc petition on that if they like. Now, with respect to my friend's argument that we don't have the arguments they would have made below because they didn't file an opposition. Well, first of all, Your Honor, we have full briefing here. Everyone knows what the best arguments they have on the merits are. But we also have this very district judge's opinion on the exact same policy issued before all this happened. And he explains that he thinks categorically 22-868 bars arbitration provisions in surplus lines policies. That's what he thinks. I don't think he's changing his mind based on discovery. That discovery, as we heard, has nothing to do with that question. Third, in terms of the specific way you can find appellate jurisdiction here, I think what you would say, at least the most straightforward thing to say, is that this is a refusal to grant a stay of litigation pending arbitration. We filed a stay, exactly that motion, with our motion to compel. The judge did not grant it. Then we asked again, this time asking to stay the discovery that arose from that first one, and the judge denied it again. I think the only way to understand the effect of that is to view it as a refusal to grant the stay of litigation. But if we conclude that we have jurisdiction over the refusal to grant a stay, then isn't the right thing to do to rule on that on appeal and not on the arbitration and say, if we went your way, nah, no more discovery, and send it back and say, decide it, judge. Is that an appropriate addressing of the refusal to grant the stay as opposed to denying the arbitration? I suppose you could do that, Your Honor, but I think what our point would be is that you have appellate jurisdiction over the whole case because of our point about the refusal to stay. The appellate jurisdiction, I don't think, is sort of cut up into pieces in that way, and you have the full briefing before you. It's a question of law. I'm sorry. Well, but your opponent says we haven't had the chance to rock around in the district court on the merits of the arbitration and swirl and dance, whatever it is, and they want to do that, and they think we're a court of review and not first view and la, la, la, and we're certainly aware of all that. So even if you think the district court's going to rule against you, get that ruling, and then you're back with us on that. I understand that, Your Honor, and look, practically, it might be that if you do that, some of these other cases might come before you, and you'll resolve the question in the next one, and then I can use it in those other cases. That's a way to handle that, too, but I think that here you have a question of law. There's no factual dispute about any of it. 22-868 says what it says. One thing I should say is, you know, you might think, well, why don't we certify this question to the Louisiana Supreme Court? Well, we know why. Well, you know why. They've already denied certification in a 4-3 opinion, so they thought about it, so I don't think we can send it to them again. So I think you just have to read this statute. The statutory text is very clear. I know my friend on the other side says, if you read this concurrence in the Juban case, it's a one-judge concurrence, and you kind of imply what it must have meant, and then you see that, indeed, they don't use the word jurisdiction again, as they did in A, that must mean that they meant to carve out arbitration clauses from forum or venue selection clauses. I just don't think that's how we do statutory interpretation in this court, or, indeed, that the Louisiana Supreme Court does statutory interpretation that way. And so I think you've got just a very clean question of law that you can decide. You have appellate jurisdiction through this refusal prong. I think you have it through the effective denial of the motion to compel prong as well, and so I think it is a good thing for this court to decide, and it doesn't, you know, I don't know that you're going to get much more from the district court in terms of the first view principle, because we already have Bufkin, that the court explained everything he thinks about this question. And so he's either right or wrong, but I think this court can rule. Let me just make sure I don't have anything else to add. You have zero seconds. Well, in that case, I don't at all, Your Honor. Thank you very much. We urge you to reverse. Thank you. Court will stand in recess for about 10 minutes.